IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| **KRYSTAL M. ANDERSON,**<br>**And all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. 4:15-cv-00119-JAJ-HCA |
| **PRINCIPAL LIFE INSURANCE** | ) | |
| **COMPANY; BENEFITS PLAN** | ) | |
| **ADMINISTRATIVE COMMITTEE; and** | ) | |
| **BENEFITS PLANS INVESTMENT** | ) | |
| **COMMITTEE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER

I.      Introduction ............................................................................................................. 1

II.     SUMMARY OF CLAIMS AND DEFENSES ..................................................... 3

        A.      Claims ....................................................................................................... 3

        B.      Defenses .................................................................................................... 4

III.    LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS ............... 5

IV.     TERMS OF THE SETTLEMENT AGREEMENT ............................................ 6

        A.      Benefits to the Structural Changes and Monetary Relief Classes........................ 7

        B.      Case Contribution Award to Plaintiff and Attorneys' Fees and Costs .................. 8

        C.      Release of Claims .................................................................................... 9

        D.      Notice and Proposed Schedule of Events ............................................. 10

V.      ARGUMENT ....................................................................................................... 11

        A.      The Court should certify the Settlement Classes because the requirements of
                Rules 23(a), 23(b)(1), 23(b)(3), and 23(g) of the Federal Rules of Civil Procedure
                are satisfied. ........................................................................................... 11

                1. The Settlement Classes satisfy the requirements of Rule 23(a)......................... 12

                2. The Structural Changes Class satisfies the requirements of Rule 23(b)(1). ..... 15

                3. The Monetary Relief class satisfies the requirements of Rule 23(b)(3). ........... 16

                4. The Court should appoint Plaintiff's Counsel as Class Counsel. ...................... 18

        B.      The Court should grant preliminary approval of the Settlement because it is fair,
                adequate and within the range of possible approval. ........................................... 19

                1. The standards for preliminary approval. .......................................................... 19

                2. The proposed settlement is fair and within the range of possible approval....... 21

        C.      The Court should approve the form and manner of Class Notice and direct that
                notice be provided to the Monetary Relief Class Members in accordance with the
                Settlement Agreement and should issue the requested ancillary orders necessary
                to establish a final approval process ................................................................... 24

VI.     CONCLUSION ................................................................................................... 26

## I.  Introduction

Plaintiff Krystal M. Anderson ("Plaintiff"), plaintiff in the above captioned class action lawsuit (the "Action"), respectfully submits this memorandum in support of her unopposed motion for an order: (1) conditionally certifying the Monetary Relief Class and Structural Changes Class[1] (the "Settlement Classes") and appointing Class Counsel; (2) preliminarily approving the Settlement; (3) enjoining Settlement Class Members from litigating any claims that arise out of or relate in any way to the claims at issue in this action pending final approval of the settlement; (4) directing notice to Monetary Relief Class Members, which include all Structural Changes Class Members, and approving the plan and form of notice; (5) appointing KKC Class Action Services as Settlement Administrator; (6) scheduling a Fairness Hearing; and (7) scheduling a hearing on Plaintiff's motion for fees and costs and the payment of a service award ("Preliminary Approval Order").

Plaintiff respectfully request that the Court enter the above-described order to preliminarily approve the settlement negotiated by Plaintiff and Defendants Principal Life Insurance Company; Benefits Plan Administrative Committee; and Benefits Plan Investment Committee (collectively "Principal" or "Defendants") in this action. Plaintiff and Principal seek to compromise and thereby settle all issues and claims alleged in the complaint filed as Docket No. 1 in the Action (the "Complaint") on behalf of all members of the proposed Settlement Classes. To that end, Plaintiff and Principal have agreed to a settlement of the Action that Class Counsel have determined will provide fair and adequate relief to the proposed Settlement Classes for the claims alleged in the Complaint (which are brought under the Employee Retirement Income Security Act ("ERISA")) during the period of August 7, 2008 through the date of the Preliminary Approval Order.

---

[1] Capitalized terms herein have the definitions set forth in the Class Action Settlement Agreement submitted herewith as Exhibit 1, unless otherwise defined herein.

In short, Plaintiff alleges that the Principal Select Savings Plan for Employees, and related Principal Select Savings Plan for Individual Field (together, the "Plans") suffered losses from ERISA-violating conduct by the Defendants. Defendants dispute these claims. In the Settlement Agreement Principal agrees to make certain structural changes to the Plans which are necessarily applicable to all current Plan participants and therefore a non opt-out Structural Changes Class, appropriately certified under Rule 23(b)(1)(A) or (B), is proposed. Principal has also agreed to make a monetary payment to members of a Monetary Relief Class to be certified under a Rule 23(b)(3) opt-out class. All members of the Structural Changes Class are members of the Monetary Relief Class, but the converse is not true as former participants in the Plans may receive monetary relief but no longer have an interest in structural changes to the Plans.

The proposed settlement is fair and meets the requirements for preliminary approval. In the process of negotiating and agreeing to the terms set forth in the Settlement Agreement, Class Counsel concluded that the Settlement Agreement is fair, reasonable and adequate, provides benefits to the Settlement Classes that justify the corresponding release of claims, and is in the best interests of the Settlement Classes. In reaching this conclusion Class Counsel considered: (1) the substantial benefits, including monetary and non-monetary relief, afforded to the Settlement Classes by the proposed settlement; (2) the risks and uncertainties attendant to complex litigation such as the Action; (3) the expense and length of time necessary to prosecute the Action through trial and any subsequent appeals; and (4) the desirability of consummating the Settlement Agreement promptly to provide effective relief to the members of the Settlement Classes. Plaintiff and Class Counsel believe that the terms set forth in the Settlement Agreement are fair, reasonable, adequate and in the best interests of the Settlement Classes. Thus, Plaintiff petitions the Court for an Order:

(1)     conditionally certifying the Monetary Relief Class as an opt-out class and the Structural Changes Class as a non-opt out class and appointing Class Counsel;

(2)     preliminarily approving the Settlement;

2

(3)      enjoining the Settlement Class Members from pursuing claims that arise out of or relate in any way to the claims at issue in this action pending final approval of the settlement;

(4)      directing notice to the Monetary Relief Class Members and approving the plan and form of notice;

(5)      appointing KKC Class Action Services as Settlement Administrator and directing it to implement the plan of notice to the Monetary Relief Class in the form approved by the Court;

(6)      scheduling a Final Approval Hearing at which time Settlement Class Members who have given notice of their intent to appear may be heard ("Fairness Hearing"); and

(7)      scheduling a hearing on Plaintiff's impending application for fees and costs.

In support of this Motion, Plaintiff submits the following documents:

- Settlement Agreement executed by the parties, attached hereto as Exhibit 1, including as exhibits a proposed Preliminary Approval Order, proposed Notice, and proposed Judgment;

- Declaration of Gregory Y. Porter ("Porter Decl."), one of Plaintiff's Counsel.

## II.  SUMMARY OF CLAIMS AND DEFENSES

### A.  Claims

Plaintiff, individually and as a representative of a putative class, brought the Action in her capacity as a participant in, and on behalf of, the Principal Select Savings Plan for Employees, and also regarding the related Principal Select Savings Plan for Individual Field (together, the "Plans"), against Principal. The Action alleges that Principal violated ERISA §§ 404 and 406, 29 U.S.C. §§ 1104, 1106, as further described below.

Principal Life Insurance Company is a life insurance, retirement plan recordkeeping, and investment services company. It sponsors the Plans and is a fiduciary under ERISA for the Plans because it established and administers the accounts in which the Plans invest, in addition to appointing, monitoring, and removing the members of the plan committees. The Benefits Plan Administrative Committee administers the Plans and is the named fiduciary under ERISA for that

purpose. The Benefits Plan Investment Committee is responsible for selecting the investment options made available to the Plans' participants and is a named fiduciary under ERISA.

ERISA requires that plan fiduciaries act solely in the interest of Plan participants when making decisions with respect to selecting, removing, replacing, and monitoring the Plans' investments. Plaintiff alleges that Defendants are plan fiduciaries and failed to fulfill these fiduciary duties by offering investment options that benefitted Principal, and by failing to obtain favorable revenue-sharing rebate arrangements.

Based upon these allegations, Plaintiff brought claims against Principal for breaches of duties of loyalty in violation of § 404(a)(1)(A) of ERISA, and engaging in prohibited transactions in violation of § 406 of ERISA. The Complaint seeks, *inter alia*, declarations that Principal breached fiduciary obligations and violated ERISA § 406; disgorgement of fees paid or incurred by the Plans; and restoration by Defendants to the Plans of all a losses resulting from Defendants' ERISA violations.

## B.  Defenses

Principal has asserted, or would assert should the litigation continue, a number of defenses to Plaintiff's claims. Principal denies the allegations made in the Action. Principal maintains that its decision to offer a broad array of Principal mutual funds to Plan participants was prudent and in the best interests of the Plans. Among the defenses that Defendants would have asserted are the following: Principal provided an extensive platform of high quality mutual funds with an appropriate investment mix for its current and former employees; Principal offered a broad array of mutual funds to the Plans' participants, including funds in many different asset classes and with a wide variety of risk profiles and a range of fee structures; and participants could select among these diverse options. Principal also contends that the fees associated with both the investment options and the administrative expenses of the Plans were reasonable. Principal would have presented

evidence showing that the fiduciary committees had studied the investment expenses and determined that they had lower fees than most of the comparable options available from its competitors.

## III.   LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS

Before filing the Complaint, Plaintiff's Counsel undertook extensive investigation to support the allegations and claims in the Complaint. Among other things, Plaintiff's Counsel, working with consultants, examined and evaluated: plan studies and surveys about the concentration of investment offerings with a single provider; Department of Labor filings from the Plans and peers; Department of Labor filings from parties in interest to the Plans; the investment structure and fees paid by the Plans in comparison with other types of investments and fees generally; plan studies and surveys addressing methods of funding the administrative costs of plans; and peer plan administrative fee structures. Plaintiff's Counsel, working with consultants, constructed estimated fee models for the Plans extrapolating from the publicly available, incomplete information. Later, Plaintiff's Counsel, working with consultants, incorporated information shared by Defendants in mediation into these fee models. This work by Plaintiff's Counsel is evident throughout the Complaint, particularly in sections III-VIII.

Plaintiff contacted Principal, pre-suit on August 6, 2014, with a draft complaint, in an attempt to resolve this matter through mediation. Plaintiff's Counsel was of the view that Plaintiff's claims have merit and that the parties might be able to resolve this dispute without embarking on protracted litigation. The parties spoke on August 8, 2014, and agreed to a tolling agreement pending an agreement to mediate, during which time a lawsuit would not be filed. On August 28, 2014, the parties agreed to mediate.

A mediation was arranged through JAMS with Judge Morton Denlow, retired magistrate judge of the Northern District of Illinois. The parties spoke with Judge Denlow by phone on

September 24, 2014, and exchanged mediation briefs with settlement proposals and other supporting documentation in advance of the November 18 mediation session. At the day-long November mediation session, the parties were able to reach tentative agreement on some, but not all, issues raised in the complaint. Because of this progress, the parties agreed that further attempts to mediate this dispute would be worthwhile.

Following the mediation, the parties spoke by phone, emailed, and exchanged further information. Plaintiff submitted a supplemental mediation statement with supporting materials on December 12, 2014, addressing issues raised during the mediation. Principal responded to the supplemental mediation statement on January 12, 2015. On January 14, 2015, the parties spoke by phone with Judge Denlow. On January 15, 2015, Principal provided additional data regarding the Plans' fees. On January 30 Plaintiff responded with a revised settlement offer and additional supporting data. On February 11, the parties spoke with Judge Denlow by phone. On February 23, 2015, Plaintiff shared a revised draft complaint with Principal. On March 3, the parties participated in a second mediation session with Judge Denlow and reached agreement on the major points of settlement, memorialized in a signed term sheet.

Thereafter, Plaintiff and Principal prepared and executed the Settlement Agreement presented to the Court on this motion, memorializing the terms of the Settlement for which Plaintiff now seeks preliminary approval. *See* Settlement Agreement, attached as Exhibit 1. The terms of the Settlement Agreement were the result of extensive, arm's length, and protracted negotiation, before, during and after the mediation.

## IV.    TERMS OF THE SETTLEMENT AGREEMENT

The material terms of the parties' Settlement Agreement are summarized below.

**A.  Benefits to the Structural Changes and Monetary Relief Classes.**

Principal has agreed to make a monetary payment of $3 million ("Settlement Amount").

Settlement Agreement, ¶¶ 1.38, 2.7, 3.1. In addition to the monetary payment, the relief provided in

the Settlement includes substantial affirmative relief. Principal will implement the following changes

to the Plans (the "Structural Changes"), unless otherwise noted:

- Defendants have agreed to reduce the amount that the Plans pay for the administrative expenses of the Plans by 50% -- reducing the charge from 14 bps to 7 bps. This change results in a net reduction of 7 basis points on a weighted plan-wide basis for each of the Plans. Defendants will implement this reduction by changing the rate level for each of the investment options. Settlement Agreement ¶ 4.2.

- The Plans will include a brokerage window through which participants will be able to invest in a selection of passively managed index mutual funds not affiliated with Principal. The Plans will not be charged any fee to establish the windows and participants will not pay any annual fee to maintain the windows (normally $75 annually for each participant who uses the brokerage window). Participants in the Plans will pay $25 for brokerage transactions online and $35 for transactions through a phone representative. Settlement Agreement ¶ 4.3.

- The Managed Account Service will be provided to Participants in the Plan at Principal's cost. Settlement Agreement, ¶ 4.4.

The plan changes that Principal will make as part of this settlement have significant value to

the Plans' participants. Plaintiff's Counsel estimates that the future monetary value of the fee

reductions set forth in Settlement Agreement ¶ 4.2 is approximately $1,400,000 annually, or $8.4

million for the six year period the covenants remain in effect. Further, participants in the Plans will

be able to choose from a wide array of non-Principal investment options through the brokerage

window, thus having additional flexibility to construct a portfolio of low-cost index funds. Further,

plan participants who use the brokerage window will not be charged the annual $75 fee and

participants who use the Managed Account Service will receive the service at cost.

In addition, Principal may select an independent fiduciary to provide such authorization as

may be required by Prohibited Transaction Exemption 2003-39. Settlement Agreement at, ¶ 2.9(a).

All costs reasonably borne by the independent fiduciary, including the reasonable fees of the independent fiduciary shall be borne by the Settlement Fund. *Id.*

After payment of any Case Contribution Award and Attorney Fees and Expenses approved by the Court; Independent Fiduciary Fees; Administration Costs; and Taxes and Tax-Related Costs, the remaining settlement amount ("Distributable Settlement Amount"), Settlement Agreement ¶ 3.2, shall be allocated among the Monetary Relief Class Members on a pro rata basis predicated upon their Average Plan Account Balances subject to the Plan of Allocation described in Exhibit 3 to the Settlement Agreement. As set forth in Settlement Exhibit 3:

(1)     Monetary Relief Class Members who no longer have a positive balance in their Plan account as of the Distribution Date will receive a check from the Settlement Administrator.

(2)     All other Monetary Relief Class Members, *i.e.*, Monetary Relief Class Members who have a Plan account with a positive balance as of the Distribution Date, will receive settlement proceeds into their Plan account in the amount provided for by the Plan of Allocation. To the extent feasible and ascertainable, those settlement proceeds will be invested based on the participant's election mix for new contributions or, if no such election is in effect, to the applicable qualified default investment option.

(3)     No payment made in subsection (1) (2) and (3) above shall be lower than $10 per Monetary Relief Class Member; any Monetary Relief Class Member whose entitlement to payment based on their Average Plan Account Balance during the Allocation Period would otherwise be below $10 will receive a payment of $10.

(4)     Any Monetary Relief Class Member who did not have any balance in his or her Plan account prior to January 1, 2014 shall receive a distribution of $10, which the parties agree is a reasonable amount for such Monetary Relief Class Members.

(5)     All Monetary Relief Class Members shall be entitled to participate in the Plan of Allocation.

**B. Case Contribution Award to Plaintiff and Attorneys' Fees and Costs**

Subject to Court approval, Class Counsel fees, costs and expenses, and a Case Contribution Award payment to Plaintiff shall be paid from the Settlement Fund prior to distribution of the Settlement Fund to the Monetary Relief Class. Settlement Agreement, ¶ 3.1. The Named Plaintiff shall petition the Court for an award not to exceed $5,000 in recognition of her service as class

representative. Settlement Agreement, ¶ 8.1. Named Plaintiff shall also be entitled to further distribution under this settlement as a Monetary Relief Class Member. *Id.* Class Counsel may petition the Court for an award of attorney's fees and costs. Settlement Agreement, ¶ 8.2. Principal agrees that it will not object either to the requests of Named Plaintiff for a service award nor to the request of Class Counsel's attorneys' fees and costs. Settlement Agreement, ¶¶ 8.1, 8.2. All requests shall be subject to Court approval. Settlement Agreement, *id.*

### C.  Release of Claims

Plaintiff and the Settlement Classes will provide a release to Principal and the other Released Parties pursuant to Section 6.1 of the Settlement Agreement, and covenants not to sue relating to any claims arising out of or relating in any way to the subject matter of the Action. Settlement Agreement, ¶¶ 6.1, 1.35. The release and covenant not to sue will include direct and derivative claims, claims on behalf of any class, claims under ERISA, common law and any other statute, and shall extend to all Defendants, including each of their present, past, and future predecessors, successors, parents, subsidiaries, affiliates, divisions, assigns, officers, directors, committees, employees, fiduciaries, administrators, actuaries, agents, insurers, representatives, attorneys, retained experts and trustees. Settlement Agreement ¶¶ 6.1, 1.35, 1.12. Class Counsel will release all claims for fees and costs not otherwise awarded. Settlement Agreement ¶¶ 6.1, 1.35.

Plaintiff and the Settlement Classes further covenant not to sue Principal with respect to the structural changes Principal has agreed to make to the Plans so long as the Structural Changes remain in effect. This covenant not to sue expires at the end of the calendar year occurring six years after this Court enters a final order identical in all material respects to that found at Exhibit 1 to the Settlement Agreement, except insofar as the Parties agree to modifications. Settlement Agreement ¶¶ 6.2(b), 1.20, 1.21.

### D. Notice and Proposed Schedule of Events

The Settlement Agreement provides that Principal shall provide the Settlement Administrator with the names and last known addresses of Monetary Relief Class Members for the purpose of providing notice of the proposed settlement. Settlement Agreement ¶ 6.5.

The proposed Class Notice, Exhibit 2 to the Settlement Agreement, provides all the information necessary to inform Monetary Relief Class Members about the nature of the Action, the terms of the Settlement, including both monetary and prospective relief, and the procedures for entering an appearance to be heard or to object to the Settlement. In addition, Class Counsel will make available to Monetary Relief Class Members key court documents, including Plaintiff's Motion for Award of Attorneys' Fees, via the website www.principal401klawsuit.com. The Class Notice will be mailed by U.S. mail, first class or sent via email (if available). Class Counsel anticipate that Monetary Relief Class Member mailing information supplied by Principal will be accurate for two reasons. First, many Monetary Relief Class Members are current employees of Principal for which Principal almost certainly has valid mailing addresses and/or email addresses. The same will be true of many former employees who are Monetary Relief Class Members. For undelivered or returned mail to Monetary Relief Class Members, the Settlement Administrator will engage in various, standardized processes to identify and locate Monetary Relief Class Members.

Plaintiff and Principal agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|
| Preliminary Approval Hearing | TBD |
| Principal to provide Settlement Administrator with class list and Class contact information | Ten days after Preliminary Approval Order |
| Mail Settlement Notice | Thirty days after Preliminary Approval Order |
| Settlement Administrator's declaration on notice | Thirty-five days after Preliminary Approval Order |

10

| Plaintiff's motions for final approval of the Settlement, and for an award of attorneys' fees and expenses, and for a Service Award for Named Plaintiff | Thirty days before Fairness Hearing |
| --- | --- |
| Objections to the Settlement and notice of intention to appear at Fairness Hearing | Fifteen days before Fairness Hearing |
| Independent Fiduciary report (if hired) | Fifteen days before Fairness Hearing |
| Response to Objections | Seven days before Fairness Hearing |
| Fairness Hearing | TBD (not less than 75 days after Preliminary Approval Order) |

## V.  ARGUMENT

### A.  The Court should certify the Settlement Classes because the requirements of Rules 23(a), 23(b)(1), 23(b)(3), and 23(g) of the Federal Rules of Civil Procedure are satisfied.

In connection with preliminary approval of the settlement, Plaintiff seeks class certification for settlement purposes. As part of the settlement, Plaintiff proposes, and solely for purposes of agreeing to settle the claims and without waiving any defenses to class certification should the settlement not be approved, Principal does not object to, certification of the Monetary Relief Class defined as follows as a non-opt-out class:

> The "Monetary Relief Class" will consist of all current and former participants in the Employees Plan or the Individual Field Plan who maintained a balance of any amount in either of the Plans at any point during the period from August 7, 2008 to the date of entry to the Preliminary Approval Order;

and certification of the Structural Changes Class as follows as a non-opt-out class:

> The "Structural Changes Class" will consist of all participants in the Employees Plan or the Individual Field Plan on or after the date of entry of the Preliminary Approval Order.

Certification of a class action is governed by Fed. R. Civ. P. 23. Rule 23(a) provides that a class action may be maintained if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

11

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed. R. Civ. P. Moreover, a class action must satisfy at least one of the requirements set forth in Rule 23(b)(1), (2) or (3). Here, Plaintiff seeks certification of the Monetary Relief Class under Rule 23(b)(3) and certification of the Structural Changes Class under Rule 23(b)(1).

### 1. The Settlement Classes satisfy the requirements of Rule 23(a).

#### a. The Settlement Classes are so numerous that joinder is impracticable.

The Settlement Classes satisfy the numerosity requirement because they are composed of thousands of persons, in numerous locations. According to the Plans' annual financial statements, at any given time during the Settlement Class Period, the Plans together have had more than 15,000 participants and beneficiaries, with more than 1,000 in each Plan, all of whom participated in one of the Plans during the Settlement Class Period. The number of Settlement Class Members is so large that joinder of all its members in either Plan or in both Plans combined is impracticable and thus, the numerosity element easily satisfied. *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560-61 (8th Cir. 1982) (affirming certification of class of 74 individuals). Moreover, courts have held that a lesser showing of numerosity may be required when the defendants' alleged conduct uniformly affects the entire class. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (adding that, in close situations, the balance should be struck in favor of finding the numerosity requirement satisfied). Here, Defendants' alleged conduct affects the entire class on a uniform basis.

#### b. There are questions of law and fact common to the Settlement Classes.

Fed. R. Civ. P. 23(a)(2) "does not require that every question of law or fact be common to every member of the class." *Paxton*, 688 F.2d at 561. The class members' claims "must depend upon a common contention . . . . That common contention, moreover, must be of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541, 2551 (2011). "The burden imposed by this requirement is light and easily met in most cases." *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 674 ( S.D. Iowa 2009).

Here, there are numerous questions of law or fact common to both classes and central to the case including, but not limited to:

a. Whether Defendants caused the Plans to offer, or failed to monitor or remove, investment options established or managed by Principal;

b. Whether Defendants were fiduciaries responsible for monitoring and making decisions with respect to the investments in the Plans;

c. Whether Defendants breached their fiduciary duties to the Plans by causing the Plans to invest their assets in certain investment options offered or managed by Principal or its subsidiaries and affiliates, or failing to monitor or remove such options;

d. Whether the investment decisions made by Defendants were solely in the interests of the Plans' participants and beneficiaries;

e. Whether the Plans suffered losses as a result of Defendants' fiduciary breaches.

Each of these questions is not only common to the classes, but will generate common answers apt to drive the a resolution of the litigation. *Dukes*, 131 S.Ct. 2541, at 2551. As such, Plaintiff's allegations clearly meet the Rule 23(a)(2) standard for commonality.

### c.  Plaintiff's claims are typical of the claims of the Settlement Classes.

The typicality requirement of Rule 23(a)(3) is satisfied when "other members of the class have the same or similar grievances as the plaintiff. The burden is fairly easily met so long as other class members have claims similar to the named plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented," typicality is satisfied "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "The typicality requirement is often met in putative class actions brought for beaches of fiduciary duty under ERISA." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 143 (S.D.N.Y. 2010).

13

All members of the Settlement Classes invested or will invest retirement assets in one of the Plans. Thus, Defendants' alleged misconduct harmed all Class Members in the same way, in that the Complaint alleges that class members lost millions of dollars in the form of higher fees and lower returns on their investments than they would have otherwise experienced. Thus, Plaintiff's claims arise from the same course of conduct that gave rise to the claims of other Class Members.

### d.   Plaintiff will fairly and adequately represent the Settlement Classes.

"The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n. 13 (1982)). The requirement encompasses two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) (internal citations omitted). Moreover, "[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012).

Plaintiff, who suffered losses as a participant in the Plan for Employees, has no interest that is antagonistic to the interests of any of the members of the Settlement Classes. Current participants share a common goal: participating in a well-run retirement plan that provides an array of prudent investment options at a reasonable cost. The prospective relief has significant value to current and future participants. Former participants have an interest in monetary relief. Here, all Settlement Class Members will benefit from the substantial monetary relief obtained in the Actions. In sum, Plaintiff

stands in the same shoes as the other members of the Settlement Classes with the same incentives to pursue and consummate a fair and reasonable settlement.

## 2. The Structural Changes Class satisfies the requirements of Rule 23(b)(1).

Rule 23(b)(1) provides that a class may be certified if the Rule 23(a) prerequisites are met and "prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). "[T]he Advisory Committee Notes to the 1966 Amendment of Rule 23(b)(1)(B) specifically state that certification is especially appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010).

Courts routinely certify class actions alleging breach of ERISA fiduciary duties pursuant to Rule 23(b)(1). *See, e.g., Krueger v. Ameriprise Financial, Inc.*, 304 F.R.D. 559, 575-578 (D. Minn. 2014); *Pashchal v. Child Development, Inc.*, No. 4:12-CV-0184, 2014 WL 112214, at *6 (E.D. Ark. Jan. 10, 2014); *In re Beacon Assocs. Litig.* 282 F.R.D. 315, 341-42 (S.D.N.Y. 2012); *Jones v. NovaStar Financial, Inc.*, 257 F.R.D. 181, 192-194 (W.D. Mo. 2009); *In re Marsh ERISA Litig.*, 265 F.R.D. at 142-44; *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74-77 (S.D.N.Y. 2006); *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002) (same). *See generally In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ("breach of fiduciary claims brought under 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held").

As an ERISA breach of fiduciary duty action, this action is a typical 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of: (a) inconsistent or

varying adjudications with respect to individual members of the Structural Changes Class that would establish incompatible standards of conduct for the Plans and (b) a structural change ordered as a result of any one action by an individual class member would alter the Plans for all class members, impairing or impeding those other members' ability to protect their interests. This is especially true because the Action seeks, and the Settlement provides for, prospective non-monetary relief involving the manner in which the Plans are structured that will provide meaningful value to the Plans' participants. It would be wholly impractical, if not potentially unlawful, for Principal to adopt different Plan terms for different employees depending on the outcome of individual actions.

Thus, a classwide settlement is the superior method for the fair and efficient resolution of this controversy. Joinder of all Members of the Structural Changes Class is impracticable. The losses suffered by some of the individual Members of the Structural Changes Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights. Moreover, Defendants, as alleged fiduciaries of the Plans, were obligated to treat all Structural Changes Class Members similarly as the Plans' participants pursuant to written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Given the nature of these allegations, no Structural Changes Class Member has an interest in individually controlling the prosecution of the Actions, and Plaintiff is aware of no difficulties likely to be encountered in the management of the Actions as class actions.

### 3.    The Monetary Relief class satisfies the requirements of Rule 23(b)(3).

The Court should certify the Monetary Relief Class under Rule 23(b)(3) because common questions of law and fact predominate over individual questions and a class action is superior to other methods for fairly and efficiently adjudicating the controversy.

The Plans, as they are required to do by law, treated all members of the Monetary Relief Class equally. All participants in the Plans had the same array of investment options and same fee structure as other participants in those Plans. Thus, all questions of liability presented by Plaintiff's claims are applicable to all members of the Monetary Relief Class. Each member of the Monetary Relief class is entitled to an individualized amount of damages. As set forth in the Plan of Allocation, the individual amount can be calculated mathematically using data in possession of Principal. Calculating the individual amount of damages does not present a substantial question, let alone a question that would predominate over the common questions of liability. The identities of class members are already known and expected to be undisputed, so there will be no individualized questions of class membership.

Because the use of a class action avoids the potential for thousands of duplicative liability determinations while imposing minimal added complexity, the class action is the superior method for fairly and efficiently adjudicating this controversy. Difficulties in managing the class action are unlikely. Identifying and notifying class members presents little if any burden for the Court or the parties, because Principal has current contact information for all, or nearly all, members of the Monetary Relief Class. Individual damages amounts will be too small to support individual actions, meaning that class members' interest in individually controlling the litigation will be minimal. Individual class members will also have a full opportunity to object, including by counsel, during the fairness hearing. At the time of filing, no other litigation concerning the controversy was pending, and subsequent to filing a single duplicative putative class action was filed. Finally, there are advantages to concentrating the litigation in a single forum, because this case is proceeding in the home judicial district for Defendants which results in greater economy of litigation for all involved

4.      **The Court should appoint Plaintiff's Counsel as Class Counsel.**

Fed. R. Civ. P. 23(g) requires a court to appoint class counsel. In appointing class counsel, the Court "must" consider:

> (i)      the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)    counsel's knowledge of the applicable law; and
>
> (iv)    the resources that counsel will commit to representing the class

Fed. R. Civ. P. 23(g)(1)(A). The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

All these factors support appointment of Plaintiff's Counsel as Class Counsel in these Actions. Plaintiff's Counsel worked closely with consultants to investigate the claims, performed numerous analyses of complex financial and investment data, and reviewed thousands of pages of Plan documents, financial statements, prospectuses, studies, surveys, and other information and data to prepare the Complaint. As the detailed and substantive allegations in the Complaint reflect, the Complaint is the product of hundreds of hours of extensive and careful research and analysis. A detailed recitation of the work performed in the Action is set forth in Paragraphs 6 through 13 of the Porter Declaration.

Plaintiff's Counsel has substantial experience with ERISA litigation, including class action litigation. At Bailey & Glasser, the primary ERISA attorney Gregory Porter has represented both plaintiffs and defendants in ERISA class actions, including as lead counsel in the recent District of Massachusetts actions *Bilewicz v. FMR LLC*, Civil Action No. 13-10636, and *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State Street Bank & Trust Co.*, Civ. Action No. 10-10588-FDS, and the North District of Illinois action *Diebold v. Northern Trust Investments*, Civil

Action No. 09-7203. Mr. Porter worked with a team of associates with years of ERISA litigation experience. Mr. Porter's individual resume and a fuller description of Bailey & Glasser's experience litigating complex class actions are attached as Exhibits A and B, respectively, to the Porter Declaration.

**B. The Court should grant preliminary approval of the Settlement because it is fair, adequate and within the range of possible approval.**

**1. The standards for preliminary approval.**

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. Manual for Complex Litigation (Fourth) § 21.61 (2004). Ultimately, to approve the proposed settlement the Court must determine that it is fair, reasonable and adequate. *In re Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013).

"At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010); *In Re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534–35 (3d Cir. 2004); *Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525, 527 (W.D. Pa. 2008). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Young v. Polo Retail, LLC*, C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); *In re Vitamins Antitrust Litig.*, MISC. 99-197 (TFH), 2001 WL 856292, at *4-5 (D.D.C. Jul. 25, 2001); 4 Alba Conte, Herbert B. Newberg, Newberg on Class Actions, § 11.25, p. 38 (4th ed. 2002).

The Court's analysis should begin with the presumption that the settlement is fair. *See, e.g., City P'ship Co. v. Atl. Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir. 1996); *Duhaime v. John Hancock Mut. Life. Ins. Co.,* 177 F.R.D. 54, 68 (D. Mass. 1997); *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 176 F.R.D. 158, 184 (E.D. Pa. 1997). Thus, at this stage, so long as the settlement falls into the range of possible approval — giving deference to the result of the parties' arms'-length negotiations and the judgment of experienced counsel following sufficient investigation and discovery — the settlement should be preliminarily approved and a final fairness hearing scheduled.

To determine whether a settlement is fair, adequate, and reasonable, "a district court should consider: (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *In re Uponor, Inc.,* 716 F.3d at 1063 (internal alteration and quotation marks omitted).

"Preliminary approval of a class action settlement requires the Court to consider whether '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Gerardo v. Quong Hop & Co.,* No. C 08-3953 JF (PVT), 2009 WL 1974483, at *2 (N.D. Cal. July 7, 2009). "Because class members will subsequently receive notice and have an opportunity to be heard on the settlement, this Court need not review the settlement in detail at this juncture; instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval." *In re M.L. Stern Overtime Litig.,* No. 07-CV-0118, 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009) (citation and internal quotation omitted).

2.     **The proposed settlement is fair and within the range of possible approval.**

   a.  **The Settlement is the result of serious, arm's-length and informed negotiations.**

An indication of whether a settlement is fair and reasonable is whether it is the product of serious, arm's length negotiations coupled with extensive analysis and investigation. Extensive negotiations and investigations minimize concerns that the Settlement Agreement might be the result of collusion among opposing parties or their counsel to undermine the interests of the class for their own benefit.

The settlement in the Actions was achieved through extensive, arm's length settlement negotiations under the guidance of the Honorable Morton Denlow (Ret). Judge Denlow has extensive experience mediating complex class actions.[2] In addition to the two in-person mediation sessions, Judge Denlow communicated with the parties by phone and email to achieve a settlement. With his assistance, the parties ultimately reached agreement and executed a memorandum of understanding summarizing the key terms on March 3, 2015.

The Complaint in the Action was the product of hundreds of hours of extensive and careful research and analysis. Plaintiff's Counsel worked closely with consultants to investigate the claims, with numerous analyses of complex financial and investment data, in addition to reviewing Plan documents, financial statements, prospectuses, studies, surveys, and other information and data to prepare the Complaint. The parties prepared detailed, substantive mediation briefs before mediation. The parties' respective positions and arguments were also subjected to vigorous questioning and analysis by the mediator, Judge Denlow. As part of the mediation, Defendants shared data with Plaintiff, allowing the parties to better value Plaintiff's claim. In sum, although there has been no formal discovery to date, Plaintiff's intense and detailed pre-complaint investigation, the mediation

_____

[2] Judge Denlow's experience and qualifications are detailed at http://www.jamsadr.com/denlow/. (Last viewed June 29, 2015).

briefing, the sharing of information during mediation, and the involvement of Judge Denlow support a finding that the settlement will have been reached through robust investigation comparable to discovery. *Cf. In re Puerto Rican Cabotage Antitrust Litig.*, 815 F.Supp.2d 448, 473-74 (D.P.R. 2011) (although formal discovery had not commenced, class counsel's substantial investigation and informal discovery permitted court to conclude the parties had sufficient information to make an informed decision about the settlement); *Rossi v. Procter & Gamble Co.*, No. 11-7238, 2013 WL 5523098, at *7 (D.N.J. Oct. 3, 2013) (although case was early in discovery, class counsel's substantial pre-suit investigation contributed to finding that parties had conducted sufficiently thorough investigation of the facts supporting settlement).

Finally, as detailed in Exhibits A and B to the Declaration of Gregory Y. Porter, Plaintiff's Counsel are experienced in complex class actions, including ERISA class actions involving 401(k) plans.

**b.   The relief obtained by the Settlement Agreement and the allocation of monetary compensation to the Monetary Relief Class is fair and reasonable**

Significantly, the Settlement Agreement offers cash compensation in the aggregate amount of $3 million, with the net amount (after payment of such attorney's fees and costs, including notice and related costs, and Plaintiff's Case Contribution Award as may be allowed by the Court) guaranteed to be paid to the Monetary Relief Class Members. There will be no claims process and therefore no reversion of any part of the Settlement funds to Defendants based upon the failure to make a claim.

Under the Plan of Allocation proposed by Class Counsel, each Monetary Relief Class Member will be paid in proportion to the average account balance he or she held in the Plans, with a minimum distribution of $10 to every Monetary Relief Class Member. Further, the Plan changes applicable to the Structural Changes Class that Principal will make as part of this settlement have significant value to Principal employees, as detailed above.

It is well settled that a proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved. *See, e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("This court has aptly held that it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'").

A class settlement need not recover the maximum damages that would be provable after establishing liability at trial, and the recovery of a fraction of that amount is reasonable particularly in a complex and risky case such as the one at bar. Indeed, even recoveries representing a very small percentage of the defendant's maximum exposure may be found to be fair, adequate and reasonable. *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla.1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003).

Under the circumstances presented in the Action, where the proposed Settlement Classes face numerous opportunities for defeat, including dismissal, denial of class certification, summary judgment, trial, and appeal, not to mention the years of delay should this Action proceed through an

appeal, the Settlement Agreement for which the parties seek this Court's approval represents the best realistic recovery for all members of the Settlement Classes, and it is well within the range of possible approval.

These are considerations taken into account by Plaintiff's Counsel in negotiating and evaluating the fairness of the Settlement and determining that entering into the Settlement is in the best interests of the Settlement Classes. As the case law establishes, the Court should not second guess that determination at this stage so long as the proposed Settlement falls within a reasonable range of possible approval and was the product of arm's length negotiations and vigorous investigation, as here. Although continuing the litigation could conceivably have resulted in a greater recovery for members of the Settlement Classes, the recovery offered through the Settlement is guaranteed, substantial and not dependent on a claims process or other limitation in getting the proceeds of the Settlement Fund to Monetary Relief Class Members and the benefits of the structural changes to the Structural Changes Class Members. The Settlement represents a reasonable compromise given the risks, delay and expense of pursuing the litigation on the merits, including a probable appeal of any judgment in favor of the Settlement Classes and of a Court order certifying the Settlement Classes. The immediacy of the recovery and the guarantee that all members of the Settlement Classes will recover argue for approval of the Settlement Agreement.

**C.  The Court should approve the form and manner of Class Notice and direct that notice be provided to the Monetary Relief Class Members in accordance with the Settlement Agreement and should issue the requested ancillary orders necessary to establish a final approval process**

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement provides for notice to the Monetary Relief Class, and an opportunity for Monetary Relief Class Members to object to approval of the Settlement and to opt out of the Monetary Relief Class. Settlement Agreement ¶¶ 1.26, 2.10, 2.12, 2.13, 2.15; Exhibit 2 to the Settlement Agreement. The Parties have agreed, subject to Court approval, to a notice plan which calls for individual mailed

24

notice or emailed notice that will provide Monetary Relief Class Members with sufficient information to make an informed decision about whether to object to the proposed Settlement. Exhibit 2 to Settlement Agreement. The notice informs Monetary Relief Class Members of the nature of the action, the litigation background and the terms of the agreement, including the definition of the Settlement Classes, the relief provided by the Settlement Agreement, the intent of Class Counsel to seek fees and costs, the Case Contribution Award payable to Plaintiff, and the scope of the release and binding nature of the Settlement on Settlement Class Members. In addition, the Notice informs the Monetary Relief Class Members that additional documents, including the Settlement Agreement, Plaintiff's Motion for Award of Attorneys' Fees, and the report of the Independent Fiduciary (if retained) are available via the website www.principal401klawsuit.com. The Notice also describes the procedure for objecting to the Settlement and states the date, time and place of the final approval hearing. *Id.* This notice and the manner in which it will be disseminated to Monetary Relief Members satisfy Rule 23(e)(1) and constitutional due process concerns and should approved.

Finally, the Court should approve Plaintiff's Counsel's selection of a Settlement Administrator and appoint KKC Class Action Services as Settlement Administrator, charged with undertaking the responsibilities described in the Settlement Agreement and schedule a fairness hearing and hearing on Plaintiff's motion of an award of reasonable attorney's fees and Case Contribution Award to Plaintiff, as set forth in the proposed Preliminary Approval Order. Such orders are necessary to establish a reasonable and efficient process for disseminating notice, providing the opportunity for Settlement Class Members to object to approval of the Settlement and considering final approval of the Settlement.

## VI. CONCLUSION

As set forth above, the proposed settlement meets the standard for preliminary approval. Accordingly, Plaintiff respectfully requests that the Court issue an Order: (1) certifying the Settlement Classes and appointing Class Counsel; (2) granting preliminary approval of the Settlement; (3) enjoining the Settlement Class Members from pursuing claims that arise out of or relate in any way to the claims at issue in this action pending final approval of the settlement; (4) directing notice to Monetary Relief Class Members and approving the plan and form of notice; (5) appointing KKC Class Action Services as Settlement Administrator; (6) scheduling a Fairness Hearing; and (7) scheduling a hearing on Class Counsel's motion for fees and costs and the payment of a Service Award to Plaintiff.

Dated: June 29, 2015                           Respectfully submitted,


                                                /S/ Gregory Y. Porter
                                               Gregory Y. Porter (admitted pro hac vice)
                                               Bailey & Glasser LLP
                                               1054 31st Street, NW
                                                Suite 230
                                               Washington, DC 20007
                                               Tel: 202-463-2101
                                               gporter@baileyglasser.com

                                               Kay M. Johansen
                                               Law Office of Kay M. Johansen
                                               504 First Ave., N.E.
                                               Mt. Vernon, IA 52314
                                               Tel: 319-895-6540
                                               kay.johansen@kayjohansenlaw.com

                                                  *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 29, 2015 that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Gregory Y. Porter*